## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUV N' CARE, LTD and ADMAR INTERNATIONAL, INC., <br><br> *Plaintiffs,* <br><br> v. <br><br> SHIBOLETH, LLP, and its members and of counsel, AMNON SHIBOLETH, OREN HEIMAN, CHARLES B. MANUEL, JR., ROCHELLE R. WEISBURG, and DOE 1-10, <br><br> *Defendants.* | CIVIL ACTION NO.: 1:16-cv-3179 <br><br><br> JURY TRIAL DEMANDED |

### CORRECTED COMPLAINT

Luv n' care, Ltd. ("LNC") and Admar International, Inc. ("Admar") (collectively "LNC"), by their attorneys, hereby complain of Defendants Shiboleth, LLP, and its members Amnon Shiboleth and Oren Heiman, and its "of counsel" Rochelle R. Weisburg and Charles B. Manuel, Jr. and other Doe 1-10 (collectively "Shiboleth", or "Defendant(s)"), as follows:

     1.     This is an action (a) for fraud, and (b) for the legal malpractice committed by Shiboleth in its legal representation of LNC in prior litigation for federal unfair competition, trademark infringement, and dilution under Section 43 of the Lanham Act, 15 U.S.C. §1125, and for unfair competition, deceptive and unfair business practices under the common law and the law of the State of New York, and in particular with regard to a law-suit entitled "LNC et al. v. Walgreen Co., et al.", Case No. 08 CIV 4457 (DC/HP), as filed 5/13/2008, and brought before the United States District Court for the Southern District of New York.

## HISTORY OF THE CASE

2.      Initially, the case was filed on May 31, 2013, in the Southern District of New York, and assigned Case No. 13-cv-3686.  Whereupon, by Order of Doc. 2, filed on 6/4/2013, the Court: (i) stated (albeit incorrectly) that the originally-filed Complaint had not been signed by a member of this Court; and (ii) required, upon pain of dismissal for want of federal jurisdiction, the filing by a date certain of an Amended Complaint, and specifically to name in haec verba the sued individual Members of the Defendant Shiboleth, LLC.  However, on the ordered due date of July 12, 2013, local counsel for the Plaintiffs timely presented the mandated Amended Complaint for electronic filing on the ECF system established and maintained by this Court per the Local Rules of this Court; but however, such filing was refused by the software, and upon timely inquiry of Clerk of Court on the ordered date of July12, 2013, the Clerk refused to accept an electronic filing and instead purported to modify the Court's Order by stating that a "paper filing" would be required.  Manifestly, the Order given by the Court did not require or even mention "paper filing."  Unfortunately, the Clerk's refusal to accept an electronic filing came late in the day, and thus the newly imposed requirement for a "paper filing" could not be accomplished on July 12, 2013, a Friday, during normal working hours of the Clerk's office. The following Tuesday, July 16, 2013, this "paper filing" was accomplished.  But, however, the Court nonetheless dismissed the case "for want of federal jurisdiction" because the filing had not been accomplished by the date that this Court had set.  On July 23, 2013, the Plaintiffs then explained in detail the above circumstances, and respectfully requested that such order be vacated, which the Court denied on July 24, 2013.

3.  Although the above Order of Dismissal was respectfully believed to be erroneous, a Notice of Appeal was not filed.  Alternatively, (i) in the interests of the judicial economy of the

Second Circuit, and (ii) inasmuch as the dismissal of the case in any event was not on the merits, and (iii) because re-filing thereof was specifically permitted under New York's "saving statute" [i.e., CPLR 205(a)], such a re-filing without intervening appeal was elected by Plaintiffs. This re-filing was made in the Eastern District of New York, in Case No.1:13-cv-04720, filed on August 22, 2013, where it was alleged that one of the individually named defendants Attorney Amnon Shiboleth had publicly stated that he resided (i.e., in West Hampton Beach). But, however, Attorney Shiboleth moved to dismiss for improper venue, stating under oath that he was an Israeli citizen and was not a resident of the United States, and was thus not a resident of the Eastern District. The Eastern District granted the motion to dismiss for want of venue, notwithstanding the provisions of 28 USC 1391 (c)(3), which states:

> (3) a defendant not resident in the United States may be sued in any judicial district…"

4.     Inasmuch as the dismissal of the EDNY case was also not on the merits, the re-filing hereof is specifically permitted under New York's "savings statute" [i.e., CPLR 205(a)]. None of the defendants have argued that they do not reside and/or perform their legal services in person within the Southern District of New York, or that a material portion of the events giving rise to the present cause of action did not occur in litigation before the United States District Court for the Southern District of New York.

5.     As a result of the above, the Plaintiffs, who have been severely injured as a result of the conduct of the Defendants, have not had their day in court such that the merits of the present dispute could be adjudicated.

## THE PARTIES

6.     Plaintiff LNC is a corporation organized and existing under the laws of the State of Louisiana, and having a principal place of business at 3030 Aurora Avenue, Monroe, Louisiana 71201.

7.     Plaintiff Admar is a corporation organized and existing under the laws of the State of Delaware, and having a principal place of business therewithin.  Admar is an affiliate of LNC.

8.     Upon information and belief, Defendant Shiboleth, LLP is a domestic registered limited liability partnership of the State of New York, and has a principal place of business at 1 Penn Plaza, Ste. 2527, New York, New York, 10119.

9.     Amnon Shiboleth is a lawyer licensed to practice law in the State of New York, a member of Shiboleth, LLP, a citizen of the Nation of Israel, and, practices law in person within the jurisdiction of this Court, the United States District Court for the Southern District of New York.

10.     Oren Heiman is a lawyer licensed to practice law in the State of New York, a member of Shiboleth, LLP, a citizen of the Nation of Israel and of the United States of America, State of New York, and upon information and belief resides at 30 W 63rd Street, Apt. 8D, New York, New York 10023-7111, which is thus located within the Southern District of New York, and practices law in person within the jurisdiction of this Court, the United States District Court for the Southern District of New York.

11.     Charles B. Manuel, Jr. is a lawyer licensed to practice law in the State of New York, is represented to the public and to LNC by Shiboleth, LLP to be "Of Counsel" and "Head of Litigation" with Shiboleth, LLP, and on information and belief is a citizen of the United States, State of Florida and resides with the State of New York.

4

12.     Rochelle R. Weisburg is a lawyer licensed to practice law in the State of New York, was formerly "Of Counsel" with Shiboleth, LLP, on information and belief is a citizen of the United States and/or Israel, and upon information and belief maintains a residence at 629 Kappock Street, Apt 3H, Bronx, New York 10463-7748 and, practices law in person within the jurisdiction of this Court, the United States District Court for the Southern District of New York.

13.     Upon information and belief, Doe 1-10, whose identities are presently unknown, are lawyers licensed to practice law in the State of New York, are members of and/or are "Of Counsel" to Shiboleth, LLP, on information and belief are citizens of the United States and/or Israel, and maintain residence(s) within New York State and, practice law in person within the jurisdiction of this Court, the United States District Court for the Southern District of New York.

## JURISDICTION AND VENUE

14.     This Court has personal jurisdiction over Shiboleth, inasmuch as its lawyers are licensed to practice law in the State of New York, and the accused tortious activities of Shiboleth, LLP occurred within the State of New York and within the Southern District of New York.

15.     The Southern District of New York has jurisdiction over the instant action pursuant to 28 U.S.C. § 1332, as the respective parties are citizens of different states and/or a foreign state, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

16.     Venue in the Southern District of New York is proper pursuant to 28 U.S.C. § 1391(b)(1), as at least one of the Defendants resides in this district, and/or this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

## FACTS RELEVANT TO ALL CLAIMS

17.     Shiboleth holds itself out to the public as a law firm on the Internet at

http://www.shiboleth.com.  And in particular and at all times relevant hereto, Shiboleth has held

itself out to the public as having expertise in litigation and intellectual property law, as follows:

> Shiboleth's experienced team of corporate and intellectual property attorneys helps clients in the technology, life sciences, industrial and other fields establish operations in the US, raise capital, operate legally and obtain and protect intellectual property rights in the United States and around the world.  Our attorneys work closely with a variety of businesses and inventors, including well-established companies, venture capital companies and emerging companies with technological assets as well as not-for-profit organizations.  We offer a variety of high-tech and intellectual property services, including:
>
> Internet and E-Commerce.  Our attorneys have experience addressing those legal issues more unique to Internet and e-commerce companies.  These include advice with respect to jurisdictional issues, including exposure to lawsuits and claims; privacy rules; negotiation and preparation of agreements with vendors and suppliers of goods and services; and structuring strategic alliances and the preparation of legal documentation related thereto.
>
> Technology Law.  We provide services with respect to financing, including private placements and venture capital monies; structuring equity incentives for employees; protection of intellectual property rights; and drafting and negotiating agreements related to commercial exploitation of the technology, including marketing, licensing, and agency agreements.
>
> Registering Trademarks, Copyrights and Patents.  We offer our clients the ability to register trademarks, copyrights and design patents.
>
> Litigating Intellectual Property Rights.  We always seek to settle any dispute without court proceedings. When litigation is unavoidable, our litigators know how to fight for clients and protect their rights.  We are also experienced in anti-counterfeiting and intellectual property enforcement matters
>
> Intellectual Property Transactions.  Whether our clients buy or sell their company or just a part of their portfolio, we are able to negotiate licenses and related agreements that protect the business and legal interests of our clients.  Working closely with our corporate department, we conduct due diligence reviews for a variety of corporate ventures and are able to record any changes of your IP registrations once the deal is complete.

See  http://web.archive.org/web/20090330193531/http://www.shibolet.com/hightech.htm, as captured by Archive.org on March 22, 2009.

18.     At all times material hereto, Shiboleth represented to the public, including LNC, that one Morris E. Cohen, Esq. held the status, authority and responsibilities of "Of Counsel" to the Shiboleth law firm, and expressly stated: "Morris E. Cohen is Of Counsel to the New York office.  Morris began his legal career in 1994 and joined Shiboleth in 2008."  Wherefore, Mr. Cohen had indicia of authority, if not actual authority, to act as an agent within the scope of his duties as a lawyer in behalf of the principal Shiboleth, and thus Shiboleth is bound via principles of respondeat superior thereby.  Moreover, Shiboleth was aware that Mr. Cohen was representing LNC, and approved of and participated with Mr. Cohen in representing LNC, stating on Shiboleth's website: "Recently, he served as lead counsel for the plaintiff in Luv n' care, Ltd. v. Insta-Mix, Inc., et al., 438 F.3d 465 (5th Cir. 2006), cert. denied, 126 S. Ct. 2968, reh'g. denied, 127 S.Ct. 21 (2006)." *Id.*

19.     At all times material hereto, Shiboleth represented to the public that one Rochelle R. Weisburg, Esq. held the status, authority and responsibilities of "Of Counsel" to the Shiboleth law firm, and expressly stated: "Rochelle R. Weisburg is Of Counsel to the New York office. Her practice focuses on bankruptcy and litigation in both state, federal, and bankruptcy court." Wherefore, Ms. Weisburg had indicia of authority, if not actual authority, to act as an agent within the scope of her duties as a lawyer in behalf of the principal Shiboleth, and thus Shiboleth is bound via principles of respondeat superior thereby.

20.     Yet further, Shiboleth accepted material responsibilities, including (i) docketing and other administrative work, and moreover (ii) legal work performed by Defendant Weisburg and other Shiboleth lawyers on and in regard to the lawsuit entitled "Luv n' care, et al. v.

Walgreen Co., et al.", Case No. 08 CIV 4457 (DC/HP), and for which Shiboleth had billed, and which LNC paid.

21. In addition, Shiboleth and particularly its Litigation Department, headed by and supervised by one Charles B. Manuel, Jr., Esq., represented and held out to the public and to LNC on Shiboleth's website, as follows: "Charles Manuel, Jr. is Of Counsel and Head of Litigation for Shiboleth LLP in New York."

22. As an inducement to the public and to LNC to generate trust and confidence in the hopes of marketing its legal services, Shiboleth, LLP had further represented to the public and to LNC that it had a "25+ member" law firm, when in truth the members of its partnership were far fewer in number.

23. The members of Shiboleth, LLP had an uncompromising duty to supervise the work of the "Of Counsel" lawyers and non-lawyer employees of the Firm.  And Mr. Manuel as "Head of Litigation" for Shiboleth had an uncompromising duty to supervise the work of the lawyers in the firm and non-lawyer employees who did litigation work, and in particular those lawyers, including but not limited to Ms. Weisburg who did litigation work for LNC.  And Ms. Weisburg also had a duty to supervise the work of non-employee workers at Shiboleth who did work under her direction.

24. The Members of Shiboleth, and Mr. Manuel and Ms. Weisburg, utterly failed in their duties of adequate supervision, as set forth in the prior paragraphs hereof.

25. Shiboleth held out to the Public on its website and further represented to LNC, and which yet further formed material representations upon which LNC relied to entrust Shiboleth with providing legal services to LNC in connection with such intellectual property litigation, as follows:

Shiboleth is a boutique law firm with top-ranked practices in corporate, litigation, real estate and high-tech/IP. Through our office in New York and our affiliates in Tel Aviv and Shanghai, we offer our clients professional, responsive, ethical and cost-effective legal services in a personalized and amicable setting.

26.     Shiboleth had further represented to LNC that it's alleged Litigation Department was "first class", and in particular possessed considerable experience in the litigation and trial of intellectual property cases, and except for Mr. Cohen, none of which was true. Ms. Weisburg was not an experienced litigation lawyer, and Mr. Manuel did not adequately train and supervise Ms. Weisburg and others of those Shiboleth personnel who per-formed legal and/or administrative services on behalf of LNC. Nor did Mr. Manuel and the Members adequately supervise the docketing department of Shiboleth that was charged with the responsibility of docketing significant dates in the litigation schedule of the said lawsuit of Luv n' care v. Walgreen Co. et al.

27.     Based upon these inducements and representations by Shiboleth, LNC in justifiable reliance thereon was induced to permit Shiboleth to provide legal services in its behalf in connection with such litigation. However, Shiboleth's Litigation Department and its personnel were inadequately trained, maintained and supervised by Shiboleth, its members, Mr. Manuel and others.

28.     Shiboleth through its authorized agents Attorneys Cohen and Weisburg and others who are lawyers with Shiboleth and/or employees of Shiboleth did provide legal services to LNC in the said intellectual property litigation before the United States District Court for the Southern District of New York, the Complaint in such litigation having been filed on May 13, 2008. See Exhibit A hereof.

29.     Subsequently, and on November 7, 2008, the assigned District Court judge in that case, Judge Chin, set a discovery cut-off date of May 1, 2009, and which was reconfirmed in the Court's Order of April 2, 2009.  See Exhibit B hereof.

30.  Shiboleth did not serve timely written discovery requests, which under the Rules of the Court, require 30 days for response under Rule 33 (Interrogatories) and Rule 34 (Requests to Produce Documents and Things).  Under the Rules of the Court, a discovery request which does not leave time sufficient before the close of discovery to require a response in accordance with Rules 33 and/or 34 of the Federal Rules of Civil Procedure, is untimely and thus need not be answered.

31.     After having had a substantial time in which to serve discovery requests, but negligently not having done so, and which was materially caused by Shiboleth's inability to handle this type of work, and the negligence and neglect of the Shiboleth docketing department, as unsupervised by Shiboleth, its members, the head of litigation Mr. Manuel, and by Defendant Weisburg, and upon which Mr. Cohen had relied, and in an (albeit ineffective) attempt to reduce the severely damaging effects of its negligence in failing to file timely discovery requests, Shiboleth further served a Notice of Deposition to take Walgreen's corporate deposition under Rule 30(b)(6) Fed. R. Civ. P., naming therein 66 diverse categories of subjects.  See Exhibit C hereof.

32.     Walgreen's consented to appear for deposition outside of the time permitted by the Court, but continued to object to the large number of belatedly requested categories, which had been caused by Shiboleth's negligence.

33.     At the deposition, Walgreen Co. supplied only some of the belatedly requested information on its sales and/or profits for (i) the copied "two-pack soft top" and (ii) some others

on the infringed "hard top cup", but continued to refuse to produce information on the product lines comprising, inter alia, the infringing "pacifiers", "baby bottles", and "no-spill cups", for example, and specifically refused to do on the grounds that Shiboleth had not made timely requests under the discovery schedule and discovery cut-off date set by this Court, and under the Rules of this Court. Thus, Shiboleth had failed to obtain this vital information that hence materially damaged LNC's case against Walgreen Co., and specifically LNC's ability to present proof at trial in order to recover adequate and complete compensation for Walgreen's infringements of LNC's intellectual property rights, and moreover LNC's lost sales of such products.

34.    Moreover, and in its Order of February 4, 2010 denying Shiboleth's dilatory motion to transfer and/or to amend, the Court had yet further noted that Shiboleth and its agents had materially misstated the facts regarding the discovery cut-off date and Shiboleth's belated discovery requests.  See Exhibit D hereof.

35.    Yet further, Shiboleth negligently failed to provide an appropriate expert report, resulting in the Court ordering that the proffered expert witness would not be permitted to testify thereon at the trial of the cause.

36.    Thus, Shiboleth, LLP -- in violation of its ethical duty of diligent and competent representation -- had failed to obtain admissible evidence of yet further actual damages and/or profits of the Defendant Walgreen Co., due to Shiboleth's negligent failure to serve timely discovery requests, and failure thereafter even to attempt to cure its negligence.

37.    Subsequently, the case was settled with Walgreen Co. paying $1.5 million in damages/profits based upon the partial discovery of only about 20% of the actual total of Walgreen's sales of the accused infringing products, but not including any discovery on multiple

11

millions of dollars of additional sales of infringing products.  Hence, if timely discovery had been served and properly pursued by Shiboleth, LNC would have received a yet further monetary recovery.

38.     Notwithstanding the above incidents of Shiboleth's negligence and malpractice, and particularly including the negligence, malfeasance and neglect of Shiboleth's docketing department, inter alia, as unsupervised by Mr. Manuel, and the devastating effect thereof that had severely limited the amount of LNC's monetary recovery based upon Walgreen's infringement of LNC's intellectual property rights, and which had resulted in a substantial diminution of LNC's sales and profitability, Shiboleth fraudulently and actively concealed the above material facts from LNC.

39. Shiboleth's legal representation of LNC continued with regard to the same subject matter of representation wherein the malpractice had been committed until at least as late as dismissal of the underlying lawsuit on the October 6, 2010.

### FIRST COUNT (Legal Malpractice)

40.     Plaintiffs repeat and reallege each and every allegation hereinabove set forth with the same force and effect as if more fully hereinafter set forth.

41.     Shiboleth failed to exercise the reasonable skill and knowledge commonly possessed by members of the legal profession in this legal community.  As a result, Shiboleth committed legal malpractice through the at least the following acts:

    a.  failure to serve appropriate and timely discovery requests on the subject of accused sales and damages/profits;

    b.  failure to obtain admissible evidence of more than $6 million in actual damages or profits of the Defendant Walgreen, due to said failure to serve timely discovery requests;

    c.  failure to advise LNC about Defendant's said tardy discovery, and comprising acts of nonfeasance, malfeasance, and misfeasance;

    d.   failure to bring a motion for further discovery (out-of time) on sales and damages/profits;

    e.   failure to bring a motion for shortening the discovery response period to less than 30 days to permit discovery within the discovery period as ordered by the Court;

    f.   materially misstating the facts to the Court regarding Shiboleth's failure to serve timely discovery requests;

    g.   failure to provide an appropriate and timely expert report;

    h.   failure to advise LNC regarding Shiboleth's fraudulent and active concealment of Shiboleth's malpractice; and

    i.   failure to properly docket litigation due dates and especially the discovery cut-off date ordered by the court.

42.    LNC would have recovered monies for all its injuries, including those related to lost sales, income, and profits thereunder, and/or would have achieved a substantially larger settlement from Walgreen Co., but-for Shiboleth's several acts of negligence, which individually and collectively had proximately caused severe damage to LNC.

43.    As a result of Shiboleth's misconduct including legal malpractice and fraud, LNC has been damaged not only with regard to the Walgreen Co. lawsuit and the settlement thereof, but potentially with regard to all infringers of LNC's rights in subsequent litigation, and further because such inadequate Walgreen settlement figures would be discoverable and would be presented to those courts as standing precedent.  Accordingly, the Plaintiffs have been damaged in an amount to be determined at trial, but which is believed will be in an amount of not less than $10 million.

## SECOND COUNT (Fraud)

44.    The allegations of each of the foregoing paragraphs are respectfully incorporated by reference.

45.     Shiboleth's above representations and inducements to LNC (i) were in regard to the material matters of the experience, capabilities and qualifications of the lawyers of Shiboleth and its personnel to provide legal services to and in particular to represent LNC adequately and professionally in the provision of legal services in regard to litigation matters significantly affecting LNC's intellectual property rights, (ii) were false, (iii) were knowingly false, (iv) were made with intent and knowledge that LNC would rely thereon, (v) which LNC justifiable did so rely, and (vi) which were to LNC's substantial damage and detriment.

46.     Shiboleth's said conduct constitutes fraud.

47.     Shiboleth's said fraud was committed within the relevant Statute of Limitations for fraud of six (6) years.

48.     Shiboleth's fraud can only be redressed thru the grant of significant compensatory and punitive damages, and with an appropriate injunction to prevent Shiboleth from committing such further conduct to damage yet other members of the Public.

## JURY DEMAND

A jury trial is respectfully demanded on all matters so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Luv n' care, Ltd. and Admar International, Inc. demand judgment against Defendants Shiboleth, LLP, and its members Amnon Shiboleth and Oren Heiman, and its "Of Counsel" Charles B. Manuel, Jr. and former "Of counsel" Rochelle R. Weisburg, and any others designated as Doe 1-10 herein, jointly and severally, as follows:

   a. On each of the First and Second Counts against Defendants in the sum of at least $10 million each, or such other amount as may be determined upon the trial of this action;

   b. Suitable punitive damages to deter others from such conduct and to punish the wrongdoer Defendants, and specifically in a Constitutionally permissible amount not to exceed 10X of the recovery for actual damages;

14

c.   The costs and disbursements of this action;

d.   Reasonable attorney's fees; and

e.   Such other relief as this Court deems just and proper.


Dated:  April 29, 2016                          Respectfully submitted,

                              By:   /s/ Robert M. Chiaviello, Jr.
                                    **Robert M. Chiaviello, Jr.**
                                    New York State Bar No.: 20186887
                                    SDNY Bar No.: RC9134
                                    E-Mail: bobc@nuby.com
                                    **LUV N' CARE, LTD.**
                                    3030 Aurora Avenue, 2nd Floor
                                    Monroe, LA  71201
                                    Tel No.:  (318) 388-4916
                                    Fax No.: (318) 388-5892

                                    **Robert M. Ward**
                                    New York State Bar No.:
                                    E-Mail: rmward@bmwiplaw.com
                                    **BMWIPLAW, LLC**
                                    621 Brixton Circle
                                    Simpsonville, SC 29681
                                    Tel. No.: (404) 606-6480

                                    *Counsel for Plaintiffs Luv n' care, Ltd.
                                    and Admar International, Inc.*

15